## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
ARLENE S.                     :    Civ. No. 3:21CV00443(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF SOCIAL        :
SECURITY                      :    March 22, 2022
                              :
------------------------------x
```

### RULING ON PENDING MOTIONS

Plaintiff Arlene S. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. [Doc. #24]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #30].

For the reasons set forth below, defendant's Motion to Dismiss **[Doc. #13] is DENIED**; plaintiff's Motion to Reverse the Decision of the Commissioner or to Remand an Administrative Agency Decision **[Doc. #24] is GRANTED, in part,** to the extent plaintiff seeks a remand for further administrative proceedings; and defendant's Motion for Order Affirming the Decision of the

1

Commissioner **[Doc. #30]** is **DENIED**.

I.    **PROCEDURAL HISTORY**[1]

Plaintiff filed an application for DIB on November 26, 2018. See Certified Transcript of the Administrative Record, Doc. #19, compiled on June 25, 2021, (hereinafter "Tr.") at 202-03. Plaintiff alleged disability beginning November 1, 2013. See Tr. 202.[2] Plaintiff's application was denied initially on February 15, 2019, see Tr. 130-33, and upon reconsideration on April 25, 2019. See Tr. 135-42.

On January 16, 2020, Administrative Law Judge ("ALJ") Matthew Kuperstein held a hearing, at which plaintiff appeared with her former counsel, Attorney Russell Zimberlin. See generally Tr. 31-55. Vocational Expert Linda Vause appeared and testified by telephone. See Tr. 55-69. On February 20, 2020, the ALJ issued an unfavorable decision. See Tr. 9-30. On January 29, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's February 20, 2020, decision the final decision of the Commissioner. See Tr. 1-6. This case is now ripe for review under 42 U.S.C. §405(g).

---

[1] In compliance with the Standing Scheduling Order, plaintiff filed a "Plaintiff's Statement of Facts," Doc. #25, to which defendant filed a response. See Doc. #30-2.

[2] Plaintiff previously applied for, and was denied, DIB. See Tr. 71-104. There is no assertion that res judicata applies to plaintiff's claims here.

On March 30, 2021, plaintiff filed a Complaint alleging: "The conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Doc. #1 at 2. Plaintiff further alleged:

> Pursuant to Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control. Since the Commissioner's office is unconstitutional, the ALJ's are not constitutionally appointed. Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ.

Id. (sic). On May 26, 2021, defendant moved "to dismiss Plaintiff's constitutional claim for lack of subject-matter jurisdiction." Doc. #13 at 1. On June 15, 2021, plaintiff filed a response to defendant's Motion to Dismiss, asserting that the Court has subject matter jurisdiction to consider plaintiff's constitutional claim. See Doc. #17. On July 9, 2021, defendant filed a Notice of Additional Authority, which alerted the Court to "two recent Supreme Court decisions addressing standing that maybe relevant to the pending motion [to dismiss]: California v. Texas, __ S. Ct. __, 2021 WL 2459255, at *4-10 (2021)" and "Collins v. Yellen, __ S. Ct. __, 2021 WL 2557067, at *11-12 (2021)[.]" Doc. #18 at 1. On October 26, 2021, with leave of Court, defendant filed a supplemental brief in support of her Motion to Dismiss. See Docs. #28, #29.

## II.  <u>CONSTITUTIONAL CLAIM</u>

At the outset, the Court addresses plaintiff's assertion that she is entitled to a new hearing because the ALJ who adjudicated her claim was unconstitutionally appointed.

On May 26, 2021, defendant filed a motion to dismiss plaintiff's constitutional claim pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that plaintiff lacked standing because she could not demonstrate traceability or redressability. <u>See generally</u> Doc. #13-1; <u>see also</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (A "plaintiff must have suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant[]" and "redress[able] by a favorable decision[]" in order to establish standing. (citation and quotation marks omitted)). The <u>sole</u> basis for defendant's motion was the issue of standing; she did not address the merits of the constitutional claim. <u>See generally</u> Doc. #13-1. Plaintiff responded on June 15, 2021, asserting that her injury was both traceable to the alleged constitutional violation and would be redressed by a favorable decision. <u>See generally</u> Doc. #17.

During the pendency of defendant's motion, on June 23, 2021, the United States Supreme Court issued a decision relevant to plaintiff's constitutional claim. <u>See</u> <u>Collins v. Yellen</u>, 141 S. Ct. 1761 (2021). On October 26, 2021, defendant filed a

4

supplemental brief addressing this decision and informing the Court that "Defendant no longer presses her threshold standing defense." Doc. #29 at 2. Rather, defendant requested the Court to convert her original Rule 12(b)(1) motion to a Rule 12(b)(6) motion for failure to state a claim. See id. at 3 n.1.

The Court may convert a Rule 12(b)(1) motion to a Rule 12(b)(6) motion where "the motion is more properly addressed as one seeking dismissal for failure to state a claim." Henry v. Comm'r of Soc. Sec., No. 2:09CV00206(JMC), 2010 WL 11523750, at *3 (D. Vt. July 26, 2010), aff'd sub nom. Henry v. Soc. Sec. Admin., Comm'r, 456 F. App'x 13 (2d Cir. 2011). When deciding whether to convert a 12(b)(1) motion, the Court considers: (1) whether plaintiff had the opportunity to respond to the assertion that the Complaint fails to state a claim; and (2) whether plaintiff would be prejudiced by the conversion. See Fraternal Ord. of Police, Nat. Lab. Council, USPS No. 2 v. U.S. Postal Serv., 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (The conversion of a Rule 12(b)(1) motion to a Rule 12(b)(6) motion was appropriate where "plaintiffs fully briefed the issue of whether they had stated a claim for which relief could be granted[.]"). Here, defendant's Motion to Dismiss was limited to the threshold issue of standing, as was plaintiff's response. Accordingly, the Court cannot properly convert defendant's original motion to a Rule 12(b)(6) motion for failure to state a

claim. Indeed, defendant raised the 12(b)(6) argument only in the supplemental brief, to which plaintiff did not respond. Therefore, the Court declines to convert defendant's Rule 12(b)(1) motion into a Rule 12(b)(6) motion. Because defendant has withdrawn her standing argument, and no other arguments were raised in the original motion, defendant's Motion to Dismiss **[Doc. #13]** is **DENIED**.[3]

Although plaintiff asserted a constitutional claim in the Complaint, she has since failed to pursue that claim. Plaintiff did not respond to the Commissioner's supplemental brief in support of the Motion to Dismiss. Plaintiff did not raise the constitutional claim in her Motion to Reverse or Remand [Doc. #24]. The Commissioner briefly addressed plaintiff's constitutional claim in her Motion to Affirm, stating: "Because that claim is not addressed in Plaintiff's current Motion to Reverse and Remand, it will not be further addressed here." Doc. #30-1 at 2 n.1. Plaintiff filed a reply to defendant's Motion to Affirm, but did not address the constitutional claim in any

---

[3] Federal courts across the country have rejected similar standing arguments raised by the Commissioner. <u>See, e.g.</u>, <u>Tafoya v. Kijakazi</u>, 551 F. Supp. 3d 1054 (D. Colo. 2021); <u>Dante v. Saul</u>, No. 20CV00702(KBM), 2021 WL 2936576 (D.N.M. July 13, 2021); <u>Albert v. Kijakazi</u>, No. 1:21CV00004(HRH), 2021 WL 3424268 (D. Alaska Aug. 5, 2021); <u>Sylvia A. v. Kijakazi</u>, No. 5:21CV00076(BMGL)(DGB), 2021 WL 4692293 (N.D. Tex. Sept. 13, 2021), <u>report and recommendation adopted</u>, 2021 WL 4622528 (Oct. 7, 2021).

manner. See generally Doc. #31. Accordingly, the Court finds
that plaintiff has abandoned her constitutional claim, and will
not further address it here. See Lipton v. Cnty. of Orange,
N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may,
and generally will, deem a claim abandoned when a plaintiff
fails to respond to a defendant's arguments that the claim
should be dismissed." (collecting cases)).[4] The Court next
considers the merits of plaintiff's substantive appeal.

III. **STANDARD OF REVIEW -- SOCIAL SECURITY APPEALS**

The review of a Social Security disability determination
involves two levels of inquiry. "First, the Court reviews the
Commissioner's decision to determine whether the Commissioner
applied the correct legal standard. Next, the Court examines the
record to determine if the Commissioner's conclusions are
supported by substantial evidence." Tejada v. Apfel, 167 F.3d
770, 773 (2d Cir. 1999) (citations omitted). Substantial
evidence is evidence that "'a reasonable mind might accept as

---

[4] It bears noting that in light of the Supreme Court's decision
in Collins, courts addressing the merits of the constitutional
claim raised by plaintiff have consistently ruled in favor of
the Commissioner. See, e.g., Hutchens v. Kijakazi, No.
1:20CV01124(LPA), 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9,
2021); Rhouma v. Comm'r of Soc. Sec., No. 4:20CV02823(TMP), 2021
WL 5882671, at *9-11 (N.D. Ohio Dec. 13, 2021); Crossley v.
Kijakazi, No. 3:20CV02298(KM), 2021 WL 6197783, at *5-8 (M.D.
Pa. Dec. 31, 2021); Kathy R. v. Kijakazi, No. 2:21CV00095(JDL),
2022 WL 42916, at *3-5 (D. Me. Jan. 5, 2022); Mor v. Kijakazi,
No. 21CV01730(JMV), 2022 WL 73510, at *3-5 (D.N.J. Jan. 7,
2022).

adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of

the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Leslie H. L. v. Comm'r of Soc. Sec. Admin.</u>, No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

## IV.   <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. <u>See</u> 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that an "impairment or combination of impairments ... significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine whether a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

> Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") "is the most" a person is still capable of doing despite limitations resulting from her physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that the Social Security Act is a remedial statute to be
broadly construed and liberally applied." Id. (citation and
quotation marks omitted).

## V.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ
concluded that plaintiff "was not under a disability, as defined
in the Social Security Act, at any time from November 1, 2013,
the alleged onset date, through December 31, 2017, the date last
insured[.]" Tr. 23.

At step one, the ALJ found: "Through December 31, 2017,
[plaintiff] engaged in substantial gainful activity during ...
2013[,]" but because "there ha[d] been a continuous 12-month
period(s) during which [plaintiff] did not engage in substantial
gainful activity[,]" the ALJ proceeded with the next steps in
the sequential evaluation. Tr. 15.[5]

At step two, the ALJ found: "Through the date last insured,
[plaintiff] had the following severe impairments: post-traumatic
stress disorder, panic disorder with agoraphobia, and

---

[5] Before the step one determination, the ALJ concluded that
plaintiff had "last met the insured status requirements of the
Social Security Act on December 31, 2017." Tr. 15.

12

degenerative disc disease of the spine with radiculopathy." Tr. 15. The ALJ found plaintiff's "deep vein thrombosis of the left leg, [and] phlebitis syndrome[]" to be non-severe impairments. Id. The ALJ determined that plaintiff's "hypercholesterolemia was not a medically determinable impairment on or before the date of last insured." Tr. 16.

At step three, the ALJ determined that, through the date last insured, plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. The ALJ "specifically considered listings 1.04 [Spine Disorders], 12.06 [Anxiety and Obsessive-Compulsive Disorders], and 12.15 [Trauma and Stressor-Related Disorders]." Id.; see also Tr. 110, Tr. 123 (identifying the subject matter of the listings considered by the ALJ).

Before moving to step four, the ALJ found that plaintiff had, "through the date last insured," the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except with further limitation to only occasional climbing of ramps or stair, balancing, stooping, kneeling, crouching, or crawling, to never climbing ladders ropes, or scaffolds; to needing to be able to avoid more than occasional exposure to hazards such as heights or machinery; to needing to be able to change position between sitting or standing as needed throughout the workday at will; and to only occasional interaction with coworkers, the general public, or supervisors.

Tr. 18 (sic). At step four, the ALJ found that "[t]hrough the

13

date last insured," plaintiff "was capable of performing past relevant work as a medical biller." Tr. 23. Because the ALJ found that plaintiff was capable of performing her past relevant work, he did not reach step five.

## VI.  **DISCUSSION**

As an initial matter, much of the record evidence post-dates plaintiff's date last insured ("DLI") of December 31, 2017. See Tr. 645-892, Tr. 903-1797. Although "[e]vidence bearing upon an applicant's condition subsequent to the [DLI]" in some circumstances may constitute "pertinent evidence[,]" the Court nevertheless pauses to note the applicable time period under review. Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004) (citation and quotation marks omitted); see also id. ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement i.e., insured status was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the" DLI. (citation and quotation marks omitted)).

A claimant, such as the plaintiff here, seeking DIB for a period of disability must, in addition to presenting evidence of her disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that she was disabled prior to the expiration of her insured status, i.e., as of her DLI. See

14

Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v.
Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R.
§§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's DLI is
December 31, 2017. See Tr. 15. Accordingly, the relevant time
period under consideration is the alleged onset date of November
1, 2013, through December 31, 2017, plaintiff's DLI. See Tr. 15,
Tr. 40.

Bearing that in mind, plaintiff asserts that the ALJ erred
by failing to properly evaluate certain medical opinion
evidence. See generally Doc. #24-1. Defendant contends that the
ALJ's decision is supported by substantial evidence, and that
the ALJ properly evaluated the medical opinion evidence. See
generally Doc. #30-1.

A.   Applicable Law

The SSA has enacted new Regulations regarding the
consideration of medical opinions for claims filed on or after
March 27, 2017. See 20 C.F.R. §404.1520c. Because plaintiff
filed her application on November 26, 2018, see Tr. 202-03, the
new Regulations apply to plaintiff's claim.

"Previously, the SSA followed the 'treating physician
rule,' which required the agency to give controlling weight to a
treating source's opinion, so long as it was well-supported by
medically acceptable clinical and laboratory diagnostic
techniques and not inconsistent with the other substantial

evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new Regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions." Jacqueline L., 515 F. Supp. 3d at 8 (citation and quotation marks omitted); see also 20 C.F.R. §404.1520c(a). For applications filed after March 27, 2017, the ALJ considers medical opinions using the factors outlined in 20 C.F.R. §404.1520c(c)(1)-(5) "as appropriate[,]" with "[t]he most important factors" being "supportability ... and consistency[.]" 20 C.F.R. §404.1520c(a); see also id. at (b)(2) ("The factors of supportability ... and consistency ... are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions[.]"). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ..., the

more persuasive the medical opinions ... will be." 20 C.F.R.
§404.1520c(c)(1). Additionally, "[t]he more consistent a medical
opinion(s) ... is with the evidence from other medical sources
and nonmedical sources in the claim, the more persuasive the
medical opinion(s) ... will be." 20 C.F.R. §404.1520c(c)(2).

When "articulat[ing] [the] consideration of medical
opinions" the ALJ "will articulate ... how persuasive [he or
she] find[s] all of the medical opinions[.]" 20 C.F.R.
§§404.1520c(b). In doing so, the ALJ "will explain how [he or
she] considered the supportability and consistency factors for a
medical source's medical opinions ... in [the] ... determination
or decision." 20 C.F.R. §404.1520c(b)(2). The ALJ will also
consider the medical source's "[r]elationship with the
claimant[;]" the medical source's "[s]pecialization[;]" and
"other factors that tend to support or contradict a medical
opinion[.]" 20 C.F.R. §404.1520c(c)(3)-(5). However, the ALJ is
"not required to[] explain" how he evaluated these additional
factors. 20 C.F.R. §404.1520c(b)(2).

The new Regulations acknowledge that "[a] medical source
may have a better understanding of [plaintiff's] impairment(s)
if he or she examines [plaintiff]" rather "than if the medical
source only reviews evidence in [plaintiff's] folder." 20 C.F.R.
§404.1520c(c)(3)(v). Thus,

> [e]ven though ALJs are no longer directed to afford
> controlling weight to treating source opinions — no
> matter how well supported and consistent with the record
> they may be — the regulations still recognize the
> "foundational nature" of the observations of treating
> sources, and "consistency with those observations is a
> factor in determining the value of any [treating
> source's] opinion." <u>Barrett v. Berryhill</u>, 906 F.3d 340,
> 343 (5th Cir. 2018)[.]

<u>Shawn H. v. Comm'r of Soc. Sec.</u>, No. 2:19CV00113(JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020); <u>accord</u> <u>Jacqueline L.</u>, 515 F. Supp. 3d at 8.

### B.   Analysis

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of plaintiff's long-time primary care physician, Dr. Anna Timell, and therefore the RFC is not supported by substantial evidence. <u>See</u> Doc. #24-1 at 2-7. Defendant contends that "substantial evidence supports the ALJ's evaluation of" Dr. Timell's opinions. Doc. #30-1 at 6.

Dr. Timell authored two medical opinions. <u>See</u> Tr. 893-95, Tr. 898-900. The first opinion, dated July 20, 2015, provided a guarded assessment of plaintiff's functional capabilities (the "2015 Opinion"). <u>See</u> Tr. 893-95. Dr. Timell concluded in the 2015 Opinion that plaintiff: (1) could continuously sit for 15 minutes at one time; (2) could continuously stand for 20 minutes at one time; (3) could sit for about two hours total in an eight-hour workday; (4) could stand/walk for about four hours total in an eight-hour workday; (5) required a job that

permitted her to shift positions at will; and (6) could never lift any weight, bend or twist, or otherwise engage in any postural activities. See id.

Dr. Timell's second opinion, dated December 18, 2017, was provided on a State of Connecticut Department of Social Services Employment Services Medical Exemption Report form (the "2017 Opinion"). See Tr 898-900. The report noted plaintiff's diagnoses of "lumbar radiculopathy, PTSD, panic disorder." Tr. 898. Dr. Timell stated that plaintiff would "never" be able to return to work, and that plaintiff's inability to work began in 2013. Id. Dr. Timell explained that plaintiff's symptoms kept her from working because "pain severe enough to make walking + sitting + standing difficult, extreme anxiety since acute trauma in 2014[.]" Tr. 899 (sic). Dr. Timell also stated that plaintiff's prognosis was "poor. I have seen no improvement in back problem and only a little improvement in her mood disorder over 2 year period despite her compliance with all prescribed therapies[.]" Id.

The ALJ found these opinions "unpersuasive" for the following reasons:

> First, Dr. Timell's statement that the claimant is never able to return to work (Exhibit B14F, pg. 1) is not a medical opinion, but rather an administrative finding reserved to the Commissioner. In addition, the extent of the limitations described by Dr. Timell at Exhibit B13F [2015 Opinion] are conclusory with little discussion of the evidence relied on in making her determinations. For

instance, Dr. Timell determined the claimant could sit
for only 2 hours. (Exhibit B13F, pg. 1). Nevertheless,
the record generally shows the claimant presents in no
acute distress, with no fidgeting, shifting positions,
alternating sitting or standing, and or otherwise
exhibiting discomfort when sitting during the period at
issue. (Exhibits B5F; B8F; B15F). Dr. Timell determined
the claimant can "never" lift or carry any weight at
all. (Exhibit B13F, p. 2). However, the actual
examination notes of Dr. Timell and the other acceptable
medical sources who saw the claimant during the period
at issue, do not show that the claimant had significant
ongoing deficits in regards to her upper extremity
strength through the date of Exhibit B13F or even through
the claimant's DLI. (Exhibits B1F; B5F; B8F; B18F). In
all, the lack of support to justify her conclusions
renders Dr. Timell's more specific opinion at Exhibit
B13F unreliable.

Tr. 22.

Plaintiff asserts two arguments with respect to the ALJ's
consideration of Dr. Timell's opinions: First, that the ALJ
failed to comply with the applicable Regulations by not
adequately explaining the supportability and consistency of Dr.
Timell's opinions; and second, that substantial evidence does
not support the ALJ's explanation as to why those opinions were
"unpersuasive." See generally Doc. #24-1 at 2-7. The Court finds
that the ALJ adequately considered the regulatory factors of
supportability and consistency with respect to Dr. Timell's
opinions. However, the ALJ's reasons for finding Dr. Timell's
opinions unpersuasive are not supported by substantial evidence.

First, the ALJ rejected the conclusion that plaintiff could
sit for only two hours at a time because "the record generally

shows the claimant presents in no acute distress, with no fidgeting, shifting positions, alternating sitting or standing, and or otherwise exhibiting discomfort when sitting during the period at issue." Tr. 22. In support of this conclusion, the ALJ relied on Exhibits B5F, B8F, and B15F. Notably, the records from B8F and B15F post-date the relevant time period, some by more than a year. See Tr. 772-856, Tr. 903-916. The ALJ also relied on records from 2019 to support his finding that plaintiff was capable of sedentary work. See Tr. 20 (citing Exhibits B23F and B24F). Notably, in 2019, plaintiff began treating with a pain management clinic. See Tr. 863-78, Tr. 1201-31. During this time period, unlike the period under consideration, it was noted that plaintiff was "able to maintain adequate functional status with good pain control. Medication therapy will be continued." Tr. 867, Tr. 870, Tr. 1211, Tr. 1217, Tr. 1221. By contrast, in September 2017, plaintiff reported that "[p]ain medication provide[d her] with little relief from pain[.]" Tr. 951. She further indicated that at that time, "[p]ain prevents [her] from sitting for more than 1 hour." Id. This fact is not acknowledged by the ALJ.

Although the ALJ is required to consider all of the evidence of record, he seems to have relied primarily on those records post-dating plaintiff's DLI, which favor his

conclusions.[6] Indeed, the ALJ seems to have picked portions of
the record post-dating plaintiff's DLI which support his
conclusion, but otherwise ignores the extremely grim picture
that these records paint of plaintiff's overall condition. Such
"[c]herry picking can indicate a serious misreading of evidence,
failure to comply with the requirement that all evidence be
taken into account, or both." Carisma A. o/b/o T.A. v. Comm'r of
Soc. Sec., 516 F. Supp. 3d 301, 306 (W.D.N.Y. 2021) (citation
and quotation marks omitted).

In fact, Dr. Timell's treatment records, reflected at
Exhibit B5F in the record and applicable to the relevant time
period, regularly documented plaintiff as appearing in acute
distress with difficulty sitting, standing, and walking. See,
e.g., Tr. 378 (December 11, 2017, Physical Findings: "In acute
distress[]" with an "[a]bnormal" gait and stance, "sits on R
buttock, rises from chair stiffly and painfully, gait is slow,

---

[6] The Commissioner specifically states: "The period under
consideration in this case is[] ... November 1, 2013, the
alleged onset date, through December 31, 2017[.]" Doc. 30-1 at 3
n.3. In her response to plaintiff's Statement of Facts,
defendant again states: "[T]he period under consideration in
this case was November 1, 2013, the alleged onset date, through
December 31, 2017, the date last insured; Defendant has limited
discussion of medical evidence to that period." Doc. #30-2 at 3
n.2. It is curious to the Court that the Commissioner is largely
silent with respect to the ALJ's reliance on evidence that post-
dates the DLI. Indeed, if the plaintiff had relied on such
evidence in support of her argument, defendant undoubtedly would
have been quick to argue that the evidence did not apply to the
relevant time period.

forward flexed[]"); Tr. 384 (November 13, 2017, Physical
Findings: "In acute distress ... Abnormal gait remains stiff,
antalgic and slow[]"); Tr. 401 (August 17, 2017, Physical
Findings: "In acute distress. ... exam hampered by low back pain
when she lies flat, ... Abnormal [gait] – leads with R foot
getting up on table, sits on R buttock, leans heavily on her
cane when she walks[]"); Tr. 442 (March 2, 2017, Physical
Findings: "In acute distress – still grimaces and goes slowly
and stiffly when she has to stand up."); Tr. 459 (December 8,
2016, Physical Findings: "In acute distress – appears fatigued
and uncomfortable ... tests positive for multiple trigger
points[]"); Tr. 484 (October 6, 2016, Physical Findings: "In
acute distress – unable to bend forward in chair, holds self
stiffly. ... Lumbosacral spine did not demonstrate full range of
motion."); Tr. 498 (July 11, 2016, Physical Findings: "In acute
distress – difficulty getting up from chair and onto exam table
– unchanged from previous visits."); Tr. 503 (May 26, 2016,
Physical Findings: "In acute distress – looks uncomfortable as
she usually does.") Tr. 573 (March 12, 2015, Physical Findings:
"In no acute distress uncomfortable, sits on R buttock, moves
slowly, looks chronically fatigued."); Tr. 599 (July 23, 2014,
Physical Findings: "In acute distress grimacing sitting bending
at waist rocking back and forth. ... Lumbosacral spine did not
demonstrate full range of motion paraspinal muscle tenderness to

23

palpation. ... Limping was observed. ... A stooped gait was observed."). Indeed, the majority of Dr. Timell's treatment notes reflected that plaintiff was in acute distress. These treatment notes support her opinions. Additionally, the 2017 Opinion stated that plaintiff's pain was "severe enough to make walking + sitting + standing difficult." Tr. 899. This is reflected in, and consistent with, the limitations set forth in the 2015 Opinion. The ALJ did not acknowledge the consistency of the two opinions, or the consistency of the opinions with Dr. Timell's treatment notes.

Similarly, the ALJ rejected Dr. Timell's conclusion that plaintiff "can 'never' lift or carry any weight at all." Tr. 22. The ALJ found that "the actual examination notes of Dr. Timell and the other acceptable medical sources who saw the claimant during the period at issue, do not show that the claimant had significant ongoing deficits in regards to her upper extremity strength through the date of Exhibit B13F or even through the claimant's DLI." Id. In support of this determination the ALJ relied on Exhibits B5F, B8F, and B18F. See id. He also relied on exhibit B1F, which consists of records from plaintiff's emergency department visit in 2015 for complaints of chest pain. See id. The ALJ's reasoning here is flawed. The lifting limitations ascribed by Dr. Timell clearly relate to plaintiff's well-documented back pain and not to "deficits in regards to her

upper extremity strength[.]" Tr. 22. Indeed, the very form on
which the 2015 Opinion was rendered noted that plaintiff's only
relevant diagnosis was "L5-S1 disc herniation[.]" Tr. 893.[7]
"Where an ALJ misreads a critical piece of evidence in the
record, and then relies on his error in reaching his opinion,
the opinion cannot be said to be supported by substantial
evidence." Smith v. Berryhill, No. 3:17CV02170(RMS), 2019 WL
1379871, at *3 (D. Conn. Mar. 27, 2019) (citation and quotation
marks omitted).

Finally, defendant argues that it was "reasonable" for the
ALJ to discount the 2015 Opinion because it was "set out in a
check-box format and do[es] not include explanations to support
the limitation apart from listing Plaintiff's diagnoses[.]" Doc.
#30-1 at 7. Although the 2015 Opinion lacks a narrative
explanation, it bears noting that the form on which the 2015
opinion was rendered does not provide any space for a narrative

---

[7] Exhibit 18F consists of physical therapy records dating from
January 28, 2017, to October 30, 2018. See Tr. 929-72. These
records note the reason for referral as "lumbar disc herniation,
fibromyalgia[.]" Tr. 935. Further, these records note
plaintiff's report, in 2017, that she "can not lift or carry
anything at all." Tr. 951. To the extent defendant relies on
plaintiff's self-report that she could lift no more than ten
pounds, this report is dated January 20, 2019, over one year
after plaintiff's DLI. See Doc. #30-1 at 8 (citing Tr. 242).
Again, the ALJ did not acknowledge, or otherwise try to
reconcile, the discrepancies between the information applicable
to the relevant time period, and those more pertinent to the
time period post-dating the DLI.

explanation. See Tr. 893-95. This is distinguishable from those
cases that have "routinely recognized the failure to provide **a
requested** narrative explanation on a check box form as a
legitimate reason for" discounting opinions from a treating
source. Josh C. v. Saul, No. 5:19CV00492(DJS), 2020 WL 5517236,
at *5 (N.D.N.Y. Sept. 14, 2020) (citation and quotation marks
omitted) (emphases added). Regardless, the Second Circuit has
recently "clarif[ied] that the nature of an ALJ's inquiry in
disability factfinding turns on the substance of the medical
opinion at issue — not its form — and ultimately whether there
is reasonable evidence in the record that supports the
conclusions drawn by the medical expert[.]" Colgan v. Kijakazi,
22 F.4th 353, 361 (2d Cir. 2022). Overall, the ALJ did not
fairly evaluate Dr. Timell's opinions in light of her extensive
treatment records, which relate to the relevant time period and
lend support to her conclusions. Accordingly, this matter is
remanded for further consideration of Dr. Timell's opinions and
treatment records.

In light of these findings, the Court does not reach
plaintiff's remaining arguments. On remand, however, the ALJ
shall address plaintiff's arguments not considered herein.
Finally, the Court offers no opinion on whether the ALJ should
or will find plaintiff disabled on remand. Rather the Court
finds remand is appropriate for the reasons discussed herein.

## VII.  <u>CONCLUSION</u>

For the reasons set forth herein, defendant's Motion to Dismiss **[Doc. #13]** is **DENIED**; plaintiff's Motion to Reverse the Decision of the Commissioner or to Remand an Administrative Agency Decision **[Doc. #24]** is **GRANTED**, to the extent she seeks a remand for further administrative proceedings; and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #30]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 22nd day of March, 2022.

```
_____/s/_____
SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
```